## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

**(1) PPE SUPPLIES, LLC,**

     **Plaintiff,**

**v.**

**(1) KHAN ENTERPRISES GENERAL TRADING COMPANY,**
**(2) NOAMAN KHAN, an individual,**
**(3) INNER RENEWABLE ENERGY (CAMBODIA) Co., Ltd.,**
**(4) MEAS SETHVIPHOU a/k/a SAKCHAI CHAKRATOK, an individual,**
**(5) KAIKANE USA, INC.,**
**(6) TROY NISHIKAWA, an individual, and**
**(7) EJET SOURCING LIMITED,**

     **Defendants.**

**Case No. 21-cv-00144-CVE-JFJ**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff PPE Supplies, LLC ("PPE Supplies"), for its Complaint against Defendants Khan Enterprises General Trading Company ("Khan Enterprises"), Noaman Khan ("Khan"), Inner Renewable Energy Cambodia ("IREC"), Meas Sethviphou a/k/a Sakchai Chakratok ("Sethviphou"), KaiKane USA, Inc., ("KaiKane"), Troy Nishikawa ("Nishikawa"), and EJET Sourcing Limited ("EJET") alleges and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Upon information and belief, Khan Enterprises is a corporation incorporated under the laws of the State of Kuwait.

2.     Upon information and belief, Khan is a citizen of the State of Kuwait, who was at all relevant times a partner and/or owner of Khan Enterprises.

1

3.     Upon information and belief, IREC is a corporation incorporated under the laws of the Kingdom of Cambodia.

4.     Upon information and belief, Sethviphou is a citizen of the Kingdom of Cambodia, who was at all relevant times the CEO and/or Chairman of IREC.

5.     Upon information and belief, KaiKane is a corporation incorporated under the laws of the State of Washington with its principal place of business located in the State of Washington.

6.     Upon information and belief, Nishikawa is a citizen of the State of Washington, who was at all relevant times a Partner and/or owner in KaiKane.  Nishikawa and Kaikane entered into a general partnership with Khan and Khan Enterprises.

7.     Upon information and belief, EJET is a corporation incorporated under the laws of the People's Republic of China ("China") with its principal place of business located in China.

8.     PPE Supplies is a Limited Liability Company organized under the laws of the State of Oklahoma with its principal place of business located in Tulsa, Oklahoma.

9.     This Court has jurisdiction over this case as diversity of citizenship is present and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The requirements of 28 U.S.C. § 1332 are met.

10.     This Court has personal jurisdiction over Defendants.  As set forth herein, Defendants have minimum contacts with Oklahoma because they have engaged in business transactions in the State of Oklahoma and have purposefully availed themselves of the privilege of conducting business in the State of Oklahoma.

11.     As set forth herein, a substantial part of the events and/or omissions giving rise to this controversy occurred within this judicial district.   Accordingly, venue is appropriate pursuant to 28 U.S.C. § 1391.

## FACTS

### -Formation of PPE Supplies-

12.     On March 7, 2020, the first person in Oklahoma tested positive for COVID-19 ("Virus").

13.     In March of 2020, a severe shortage of personal protective equipment was occurring worldwide and within the State of Oklahoma.

14.     On March 23, 2020, PPE Supplies was formed as a Limited Liability Company with the Oklahoma Secretary of State.

15.     The members of PPE Supplies are Casey Bradford ("Bradford"), Michael Velasquez ("Velasquez"), and Brett Baker ("Baker").

16.     Bradford, Velasquez, and Baker formed PPE Supplies for the purpose of obtaining, distributing, and ultimately manufacturing personal protective equipment in the State of Oklahoma.

### -The OSDH Purchase Orders-

17.     On March 24, 2020, the Oklahoma State Department of Health ("OSDH") entered into a Purchase Order with PPE Supplies for 200,000 N95 respirator masks for a total cost of $864,500.00.  *See* Exhibit 1, March 24, 2020 OSDH Purchase Order.

18.     On March 26, 2020, the OSDH entered into a second Purchase Order with PPE Supplies for an additional 1,000,000 N95 respirator masks for an additional

$4,390,000.00.  *See* Exhibit 2, March 26, 2020 OSDH Purchase Order.

19.     On March 27, 2020, the OSDH wired PPE Supplies $2,125,000.00 as a deposit to purchase the required N95 masks.

20.     On March 28, 2020, the OSDH entered into a third Purchase Order with PPE Supplies for an additional 700,000 N95 respirator masks, for an additional cost of $2,999,997.00.  *See* Exhibit 3, March 28, 2020 OSDH Purchase Order.

### *-PPE Supplies Purchases Masks to Fulfill the OSDH's Order-*

21.     Due to the shortage of masks in Oklahoma and nationwide in the spring of 2020, PPE Supplies' members looked to international suppliers to provide the needed masks.

22.     During that time, Velasquez contacted Nishikawa to ascertain whether he could source N95 masks to fulfill the Purchase Orders from the ODSH and Nishikawa responded and stated that he could do so.

23.     Nishikawa contacted his business partner, Khan with Khan Enterprises, and ordered two million N95 respirator masks.

24.     Upon information and belief, Nishikawa, KaiKane, Khan, and Khan Enterprises were doing business with PPE Supplies as a general partnership.

25.     Nishikawa and Khan represented to PPE Supplies that Khan Enterprises had sufficient N95 respirator masks to fulfill the OSDH's Purchase Orders, which were available for prompt shipment to Oklahoma.

26.     Accordingly, on March 27, 2020, PPE Supplies entered into a Purchase Order with Khan Enterprises for 500,000 N95 masks from China for a total cost of

4

$870,000.00.  Exhibit 4, March 27, 2020 Khan Enterprises Purchase Order.

27.     The March 27, 2020 Purchase Order signed by Khan states, "Bill to: Kaikane

USA, Inc., Redmond, WA 98052 USA" and provides that delivery would occur within 5-

7 days after payment was received.  *Id.*

28.     On March 27, 2020, PPE Supplies wired Khan Enterprises payment of

$870,000.00 to purchase the N95 respirator masks to fulfill the OSDH's Purchase Orders.

Exhibit 5, March 27, 2020 Wire Transfer.

29.     On March 31, 2020, PPE Supplies entered into a Second Purchase Order with

Khan Enterprises for another 500,000 masks for a total cost of $870,000.00.  Exhibit 6,

March 31, 2020 Purchase Order.

30.     The March 31, 2020 Purchase Order signed by Khan states, "Bill to: Kaikane

USA, Inc., Redmond, WA 98052 USA" and provides that delivery would occur within 5-

7 days after payment was received.  *Id.*

31.     On April 2, 2020, PPE Supplies wired Khan Enterprises a second payment

of $870,000.00 to purchase the N95 respirator masks to fulfill the OSDH's Purchase

Orders.  Exhibit 5.

32.     In total, PPE Supplies wired $1.74 million to Khan Enterprises.

33.     Following PPE Supplies' transfer of $1.74 million to Khan Enterprises, Khan

advised Velasquez that he had intended to purchase the masks from Sethviphou with IREC.

34.     Additionally, on April 27, 2020, IREC and Sethviphou entered into a Sale

and Purchase Agreement with EJET whereby IREC sought to purchase 1,000,000 N95

masks for PPE Supplies from EJET.  Exhibit 7, EJET Sale and Purchase Agreement.

5

*- Defendants' Breaches of their Duties to PPE Supplies-*

35.     As of the date of the filing of this Complaint, Defendants have neither fulfilled the March 27 and March 31, 2020 Purchase Orders made by PPE Supplies nor have they returned the $1.74 million PPE Supplies wired to Khan Enterprises, despite repeated demands by PPE Supplies.

36.     Due to the Virus' rapid worldwide spread and the resulting government shutdowns and travel restrictions, PPE Supplies initially experienced severe difficulties in transporting the N95 masks to Oklahoma.

37.     PPE Supplies explored multiple avenues for transporting the masks to Oklahoma, including renting a commercial airplane.

38.     PPE Supplies' member Casey Bradford also made plans to travel to China and supervise the transportation of the masks to Oklahoma.

39.     During this time, Khan repeatedly reassured PPE Supplies that Khan Enterprises had sufficient masks to fulfill the OSDH's Purchase Orders, which he asserted were available for prompt shipment.

40.     However by the end of April, 2020, Khan had yet to supply confirmation that the masks were in transit to Oklahoma.

41.     On May 1, 2020, PPE Supplies' counsel sent Khan and Khan Enterprises a demand letter stating that unless PPE Supplies received confirmation of immediate delivery of the masks by May 4, 2020, PPE Supplies would require a full refund.  Exhibit 8, May 1, 2020 Letter.

42.     On or about May 6, 2020, Khan advised PPE Supplies that IREC and/or its

supplier had sold the masks earmarked to PPE Supplies to the Mongolian Government and, therefore, Khan Enterprises would not be able to deliver PPE Supplies' orders as promised. *See, e.g.,* Exhibit 9, May 6, 2020 Letter.

43.     PPE Supplies promptly demanded a full refund of the $1.74 million it had paid Khan Enterprises.  *Id.*

### *- Defendants Promise to Repay PPE Supplies-*

44.     Khan, Khan Enterprises, Sethviphou, and IREC have repeatedly acknowledged their debt to PPE Supplies and have repeatedly agreed to repay the $1.74 million.

45.     On May 7, 2020, Khan sent an email to Bradford, Baker, PPE Supplies' counsel, and Nishikawa stating, in part, "[w]e Khan Enterprises Company and IREC will assist in recovering back the funds to transfer back to PPE . . . ."  Exhibit 10, May 7, 2020 Email.

46.     On May 28, 2020, Khan sent Bradford an email advising, "[a]s discussed today please note the transfer for funds from IREC will be done tomorrow, the CEO of IREC Mr. [Sethviphou] has already clarified the details with the bank and they will forward the bank transfer details tomorrow."  Exhibit 11, May 28, 2020 Email.

47.     On June 3, 2020, Sethviphou, on behalf of IREC, signed a document, stating:

We, [IREC], have agreed and take full responsibility to transfer the refund money for N95 Mask Purchase Order sent to us through Khan Enterprises General Trading Company for the customer PPE Supplies LLC, from our Bank Account, we have not yet received this refund from our Suppliers in China, however without awaiting this we have decided to use our own funds and transfer to PPE Supplies LLC.  Please note this process has been delayed due to the various compliance processes of the bank in verification of this

7

transaction as we did not directly receive the funds from PPE Supplies LLC, however we have resolved all issues and queries from our bank and our bank is awaiting final go ahead from the Central Bank and immediately after that the transfer will be done to PPE Supplies LLC.  Please note the remittance form and all other required documents have already been submitted to our Bank and have also been forwarded to PPE Supplies LLC.  **We apologize for this inconvenience and assure you that the funds will be transferred ASAP to PPE Supplies LLC.**

Exhibit 12 (emphasis added).

48.     On July 29, 2020, PPE Supplies, through its counsel, sent Khan and Khan Enterprises a demand letter requesting a full refund of the $1.74 million.  Exhibit 13, July 29, 2020 Letter.

49.     On July 31, 2020, Sethviphou, on behalf of IREC, sent PPE Supplies a "Confirmation fund transfer" document purporting to show that $1.74 million was in transit to PPE Supplies.  Exhibit 14.  The promised funds never arrived.

50.     On August 14, 2020, Sethviphou signed and supplied to PPE Supplies a document, stating,

I Meas Sethviphou aka Sakchai Chakratok, representing IREC [] hereby solely take full responsibility for the full refund of the money sent for the PO Number TN-5463-3, and Invoice #s 31032020 and 01042020.

We IREC are in the process of arranging the funds ASAP to transfer to PPE Supplies LLC and shall make sure we honor our commitment of transferring the full amount of 1.74 million USD (One Million Seven Hundred Forty Thousand) to PPE Supplies LLC.

Exhibit 15.

51.     Along with the August 14, 2020 document, Sethviphou also supplied a signed promissory note for $1.74 million ("Promissory Note").  *Id.*

52.     In the Promissory Note, Sethviphou and IREC promised to pay PPE Supplies

$1.74 million plus interest of 3.25 % per annum with all principal and interest due on demand.  Final maturity of the Promissory Note was due by or before August 25, 2020.  *Id.*

### -*The OSDH Lawsuit Against PPE Supplies*-

53.     PPE Supplies has communicated and coordinated with the United States Department of State, Department of Commerce, and Federal Bureau of Investigation in a continuing effort to recover the funds.

54.     IREC has repaid only $50,000.00 to PPE Supplies.  Exhibit 16.

55.     On June 5, 2020, PPE Supplies repaid $300,000.00 to the State of Oklahoma from its bank account.

56.     The OSDH is well aware of PPE Supplies' continued attempts to recover the funds from Defendants.  *See, e.g.,* Exhibit 17.

57.     Yet, on January 26, 2021, the OSDH filed a lawsuit against PPE Supplies and one of its members, Casey Bradford.

58.     In its lawsuit, the OSDH asserts a claim for breach of contract against PPE Supplies.

59.     OSDH also asserts a claim for misrepresentation against Bradford and seeks punitive damages.

### CLAIMS

### COUNT I —BREACH OF CONTRACT –
### KHAN ENTERPRISES, KHAN, KAIKANE, AND NISHIKAWA

60.     PPE Supplies re-alleges and incorporates by reference Paragraphs 1-59 of this Complaint as if set forth fully herein.

61.     On March 27, 2020, and March 31, 2020, PPE Supplies entered into two contracts with Khan Enterprises for the purchase of N95 respirator masks.

62.     Subsequently, Khan and Khan Enterprises also repeatedly promised PPE Supplies that it would repay the $1.74 million.

63.     Khan Enterprises breached its agreements with PPE Supplies by failing to ever deliver the masks or return the $1.74 million that PPE Supplies paid to Khan Enterprises.

64.     Khan and Khan Enterprises breached their promises to repay the $1.74 million to PPE Supplies.

65.     Khan Enterprises, Khan, KaiKane, and Nishikawa are jointly and severally liable as partners for the contracts entered into between Khan Enterprises and PPE Supplies.

66.     As a result of these breaches, PPE Supplies has sustained actual, incidental, and consequential damages which continue to accrue, including but not limited to loss of the $1.74 million, the cost of insurance to insure the masks, the filing of the OSDH lawsuit, pre- and post-judgment interest, costs, and attorney fees.

## COUNT II – BREACH OF CONTRACT/BREACH OF PROMISSORY NOTE – IREC AND SETHVIPHOU

67.     PPE Supplies re-alleges and incorporates by reference Paragraphs 1-66 of this Complaint as if set forth fully herein.

68.     IREC and Sethviphou repeatedly promised and contracted with PPE Supplies to repay the $1.74 million that PPE Supplies paid Khan Enterprises for the purchase of the

N95 respirator masks, including signing a Promissory Note for the $1.74 million, plus interest.

69.     IREC and Sethviphou have breached their Agreements with PPE Supplies, including the Promissory Note, by failing to repay the funds.

70.     As a result of these breaches, PPE Supplies has sustained actual, incidental, and consequential damages which continue to accrue, including but not limited to loss of the $1.74 million, the cost of insurance to insure the masks, the filing of the OSDH lawsuit, pre- and post-judgment interest, costs, and attorney fees.

## COUNT III – FRAUD/DECEIT – KHAN AND SETHVIPHOU

71.     PPE Supplies re-alleges and incorporates by reference Paragraphs 1-70 of this Complaint as if set forth fully herein.

72.     Khan repeatedly represented to PPE Supplies' members that he had sufficient N95 masks to fulfill the OSDH's Purchase Orders with PPE Supplies, which were available for prompt shipment to Oklahoma.

73.     Additionally, Khan and Sethviphou made many material representations to PPE Supplies' members that Khan, Khan Enterprises, Sethviphou, and IREC would repay the $1.74 million, plus interest, owed to PPE Supplies.

74.     Khan and Sethviphou's representations made to PPE Supplies' members were false.

75.     Khan and Sethviphou made such representations to PPE Supplies' members knowing the representations were false and/or made such representations recklessly, without any knowledge of their truth.

76.     Khan and Sethviphou made such representations to PPE Supplies with the intention that PPE Supplies would act on the representations.

77.     PPE Supplies took many actions in reliance upon Khan and Sethviphou's misrepresentations, including continuing to deal with Defendants.

78.     As a result of Khan and Sethviphou's misrepresentations, PPE Supplies has sustained actual, incidental, and consequential damages which continue to accrue, including but not limited to loss of the $1.74 million, the cost of insurance to insure the masks, the filing of the OSDH lawsuit, pre- and post-judgment interest, costs, and attorney fees.

### COUNT IV – UNJUST ENRICHMENT –
### KHAN ENTERPRISES, KHAN, IREC, SETHVIPHOU, AND EJET

79.     PPE Supplies re-alleges and incorporates by reference Paragraphs 1-78 of this Complaint as if set forth fully herein.

80.     PPE Supplies conferred a benefit upon Khan and Khan Enterprises by transferring $1.74 million to them to purchase N95 respirator masks.

81.     Upon information and belief, Khan and Khan Enterprises transferred all or part of the $1.74 million to Sethviphou and IREC.

82.     Upon information and belief, Sethviphou and IREC transferred all or part of the $1.74 million to EJET.

83.     Under the circumstances set forth in this Complaint, it would be inequitable for Khan, Khan Enterprises, Sethviphou, IREC, and EJET to retain the funds.

84.     PPE Supplies should therefore be entitled to judgment against Khan, Khan

Enterprises, Sethviphou, IREC, and EJET, together with attorney's fees, costs, and interests accrued and accruing.

### COUNT V – CHOSE IN ACTION – KHAN ENTERPRISES, KHAN, IREC, SETHVIPOU, AND EJET

85.     PPE Supplies re-alleges and incorporates by reference Paragraphs 1-84 of this Complaint as if set forth fully herein.

86.     Khan Enterprises, Khan, IREC, Sethviphou, and EJET received $1.74 million from PPE Supplies and have refused to return the funds.

87.     PPE Supplies has been damaged in the amount of $1.74 million plus pre- and post-judgment interest continuing to accrue, incidental and consequential damages, costs, and attorney's fees, and is entitled to recover those costs from Khan Enterprises, Khan, IREC, Sethviphou, and EJET.

WHEREFORE, Plaintiff PPE Supplies, LLC, prays that the Court enter judgment in its favor and against Defendants in excess of $75,000.00, along with interest, costs, attorneys' fees, and such other and further relief as may be appropriate.

Respectfully submitted,

_William W. O'Connor, OBA No. 13200_
Margo E. Shipley, OBA No. 32118
**HALL, ESTILL, HARDWICK,**
**GABLE, GOLDEN & NELSON, P.C.**
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone: (918) 594-0400
Facsimile: (918) 594-0505

**ATTORNEYS FOR PLAINTIFF,**
**PPE SUPPLIES, LLC**

4821382.1:008581:00001