## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PPE SUPPLIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-0144-CVE-SH |
| | ) | |
| KHAN ENTERPRISES GENERAL | ) | |
| TRADING COMPANY, | ) | |
| NOAMAN KHAN, an individual, | ) | |
| INNER RENEWABLE ENERGY | ) | |
| (CAMBODIA) Co., Ltd., | ) | |
| MEAS SETHVIPHOU a/k/a SAKHAI | ) | |
| CHAKRATOK, an individual, | ) | |
| KAIKANE USA, INC., | ) | |
| TROY NISHIKAWA, an individual, and | ) | |
| EJET SOURCING LIMITED, | ) | |
| | ) | |
| Defendant(s). | ) | |

## OPINION AND ORDER

Before the Court are defendant KaiKane USA, Inc.'s motion to dismiss (Dkt. # 17), and

defendant Troy Nishikawa's motion to dismiss (Dkt. # 18).  Defendants argue that they are not

subject to personal jurisdiction in Oklahoma, and seek dismissal under Fed. R. Civ. P. 12(b)(2).  In

the alternative, they argue that under Fed. R. Civ. P. 12(b)(6), plaintiff PPE Supplies, LLC has failed

to state a claim upon which relief may be granted.  Specifically, defendants argue that plaintiff has

failed to plead sufficient facts to support a plausible allegation that KaiKane USA, Inc. and Troy

Nishikawa were in a contractual relationship with plaintiff, or that defendants had formed a general

partnership with defendants Noaman Khan and Khan Enterprises General Trading Company.

Finally, defendants ask the Court to abstain from exercising its jurisdiction, arguing that plaintiff has

raised nearly identical claims against the same parties in an earlier-filed Oklahoma state court

proceeding.  Plaintiff has filed responses to the motions (Dkt. ## 22, 23 respectively), and defendants have filed replies (Dkt. ## 24, 25 respectively).

## I. Background

Plaintiff PPE Supplies, LLC is a limited liability company registered with the Oklahoma Secretary of State,  the members of which are Casey Bradford, Michael Velasquez, and Brett Baker. Dkt. # 2, at 3.  In response to the COVID-19 pandemic and the ensuing worldwide shortage of personal protective equipment (PPE), Bradford, Velasquez, and Baker formed PPE Supplies on March 23, 2020 "for the purpose of obtaining, distributing and ultimately manufacturing personal protective  equipment in the State of Oklahoma."  Id.  The day after PPE Supplies' formation, the Oklahoma State Department of Health (OSDH) entered into a purchase order contract with plaintiff, ordering 200,000 N95 respirator masks at a total cost of $864,500.  Id.  Just two days later, on March 26, 2020, OSDH placed an order for an additional 1,000,000 N95 masks for an additional cost of $4,390,000, and wired PPE a $2,125,000 deposit the following day.  Id. at 3-4.  Finally, on March 28, 2020, OSDH entered into a third purchase order contract with PPE Supplies for an additional 700,000 N95 masks for $2,999,997.  Id. at 4.

Facing a domestic shortage of masks, PPE Supplies "looked to international suppliers to provide the needed masks" to fulfill OSDH's orders totaling 1.9 million N95 masks.  Id.  Velasquez contacted defendant Troy Nishikawa, a shareholder and officer of defendant KaiKane,[1] Dkt. # 18, at 4, to inquire whether Nishikawa could source N95 masks.  Dkt. # 2, at 4.  Nishikawa contacted defendant Noaman Khan, of defendant Khan Enterprises General Trading Company, and brokered

---

[1]     The complaint alleges that Nishikawa is a "Partner and/or owner in KaiKane," Dkt. # 2, at 2; however, in his motion to dismiss, Nishikawa clarifies that he is a shareholder and officer of Kaikane.  Dkt. # 18, at 4.

a deal between PPE Supplies and Khan Enterprises for two million N95 masks.  Id. at 4.  On March 27, 2020 and March 31, 2020, respectively, PPE Supplies entered into two purchase order contracts with Khan Enterprises for a total of 1,000,000 N95 masks from China at a price of $1,740,000.  Id. at 4-5.  Khan Enterprises' two invoices list KaiKane's company name and address under "bill to" and PPE Supplies' company name and address under "deliver to."  Dkt. # 2-4; Dkt. # 2-6.  PPE Supplies wired $870,000 to Khan Enterprises on March 27, 2020, and another $870,000 on April 2, 2020 (for the total purchase price of $1,740,000).  Dkt. #2, at 5.  After receiving PPE Supplies' wire transfers, Khan informed Velasquez of his intention to purchase the masks from defendant Meas Sethviphou of defendant Inner Renewable Energy (Cambodia) Co., Ltd. (IREC).  Id.

It is not entirely clear what happened between April 2, 2020, when PPE Supplies sent Khan Enterprises the second wire transfer, and May 1, 2020, when PPE Supplies' counsel sent Khan Enterprises the first of three demand letters.[2]  However, "PPE Supplies initially experienced severe difficulties in transporting the N95 masks to Oklahoma[,]" and even explored the possibility of renting a commercial airplane or for Bradford to travel to China to oversee the transportation of the masks to Oklahoma.  Id. at 6.  Khan nevertheless reassured PPE Supplies that "Khan Enterprises had

---

[2]     The complaint alleges that PPE Supplies experienced severe difficulties transporting the masks because of government shutdowns and restrictions.  Dkt. # 2, at 6.  However, the attached exhibits show email exchanges between Khan and PPE Supplies in which Khan informed PPE that IREC had signed a purchase agreement with Ejet.  Dkt. # 2-10, at 1.  This purchase contract was executed on April 27, 2020 and listed a total payment due for 1,000,000 N95 masks at $3,150,000, which is nearly double the original agreed upon price of $1,740,000.  Dkt. # 2-7, at 3.  Further, in the same email exchange with Khan Enterprises, Khan stated "[w]e had to face a lot of difficulties due to first commitment of 3 Million Masks Supplies being reduced to just 500,000 due to price fluctuations in the Chinese Market . . . .  Unfortunately there was no firm commitment from PPE Supplies either for purchase of the rest of the 2.5 Million Stock of Masks, after the supply of 500,000, although there were verbal assurances given from their side that once they would get the 500,000 that they might purchase the rest of the stock that was initially agreed[.]" Dkt # 2-10, at 1.

sufficient masks to fulfill OSDH's Purchase Orders, which [Khan] asserted were available for prompt shipment." Id. By the end of April, PPE Supplies had yet to receive a shipment confirmation from Khan Enterprises. Id. On May 1, 2020, PPE Supplies' counsel sent defendants Khan and Khan Enterprises the first demand letter informing defendants that "unless PPE Supplies received confirmation of immediate delivery of the masks by May 4, 2020, PPE Supplies would require a full refund." Id.

PPE Supplies' counsel sent a second demand letter on May 6, 2020, requesting confirmation of immediate shipment and informing Khan that PPE Supplies was "under threat of legal action from [their] customer, the US State of Oklahoma." Dkt. # 2-8. That same day, Khan informed PPE Supplies that either IREC or its supplier had sold the masks that had been "earmarked" for PPE Supplies, and that Khan Enterprises would not be able to fulfill PPE Supplies' order. Dkt. # 2, at 7. In response, PPE Supplies demanded a full refund of the $1,740,000 it had wired to Khan Enterprises. Id. PPE Supplies' counsel sent a third and final demand letter (Dkt. # 2-13) on July 29, 2020, requesting a full refund. Despite numerous assurances in writing from defendants Khan Enterprises and IREC (Dkt. # 2-10, at 2; Dkt. # 2-14; Dkt. # 2-15), including a signed promissory note from IREC (Dkt. # 2-15), PPE Supplies has been refunded only $50,000 to date. Dkt. # 2, at 8-9.

Consequently, on January 26, 2021, OSDH filed a lawsuit against PPE Supplies and Bradford in Oklahoma County District Court (the state court action), asserting claims for breach of contract and misrepresentation. Id. In that case, on March 22, 2021, PPE Supplies asserted third party claims against KaiKane, Nishikawa, Khan Enterprises, Khan, IREC, Sethviphou, and Ejet  for  breach of contract against Khan Enterprises, Khan, KaiKane, and Nishikawa;  breach of contract and breach

4

of promissory note against IREC and Sethviphou; fraud and deceit against Khan and Sethviphou; unjust enrichment against Khan, Khan Enterprises, IREC, Sethviphou, and Ejet; chose in action against Khan Enterprises, Khan, IREC, Sethviphou, and Ejet; and for indemnity and contribution from all third-party defendants.  Dkt. #17-2, at 1, 14 -18.

On March 31, 2021, PPE Supplies filed this case alleging five of the six claims it alleged in the state court action: breach of contract against Khan Enterprises, Khan, KaiKane, and Nishikawa (count 1); breach of contract and breach of promissory note against IREC and Sethviphou (count 2); fraud and deceit against Khan and Sethviphou (count 3); unjust enrichment against Khan, Khan Enterprises, IREC, Sethviphou, and Ejet (count 4); and chose in action against Khan Enterprises, Khan, IREC, Sethviphou, and Ejet (count 5).  Dkt. # 2, at 9-13.

## II. Personal Jurisdiction

Defendants Nishikawa and KaiKane argue that this Court does not have personal jurisdiction over them as to plaintiff's claims.  Plaintiff argues that Nishikawa has "sufficient contacts with the State of Oklahoma to establish specific personal jurisdiction in this Court." Dkt. #22, at 14.  Plaintiff further argues that, based on years of conducting business in the state, KaiKane has sufficient minimum contacts with Oklahoma to establish personal jurisdiction in this Court.  Dkt. # 23, at 16.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).  "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion."  Id. (citations omitted).  "The plaintiff may make this

5

prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).  The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990).  If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor.  Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F).  "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

Due process requires that the nonresident "defendant's conduct and connection with the forum State are such that [the nonresident] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'"  Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291).  The existence of such minimum contacts must

6

be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

### A. Troy Nishikawa

Plaintiff argues that this Court has specific personal jurisdiction over Nishikawa. Dkt. # 22, at 13. Specific jurisdiction requires a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). To do so, courts "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, No. 09-CV-0381-CVE-FHM, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091). Second, if such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091).

Here, plaintiff filed suit against Troy Nishikawa in his individual capacity. Dkt. # 2, at 1. For minimum contacts to exist, Nishikawa must have "purposefully directed his activities at the

residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp., 471 U.S. at 472.  And, for minimum contacts to give rise to specific personal jurisdiction, there must be a nexus between Nishikawa's forum-related contacts and plaintiff's cause of action.  See OMI Holdings, 149 F.3d at 1095.  Plaintiff alleges in its complaint (Dkt. # 2) that Nishikawa "entered into a general partnership with Khan and Khan Enterprises."  Dkt. # 2, at 2. This statement is the sole allegation in the complaint tying Nishikawa to this suit in his individual capacity.  Id.  But this statement does not support the allegation that Nishikawa was acting in his individual capacity throughout any of his interactions with PPE Supplies or the State of Oklahoma.  Moreover, Nishikawa states in his affidavit (Dkt. # 18-1), "[a]ll interactions I have ever had with PPE Supplies and its representatives have been on behalf of KaiKane in my role as executive vice president of KaiKane."  Dkt. # 18-1, at 2.  Thus, there is nothing in the complaint establishing that Nishikawa purposefully directed activities at the forum's residents in his individual capacity, rather than as an officer of KaiKane.  As such, this Court finds that plaintiff has not met its burden to establish a prima facie showing that Nishikawa has sufficient minimum contacts in his individual capacity for this Court to exercise specific personal jurisdiction over him.

Although plaintiff does not make the argument with specificity that this Court has general personal jurisdiction, the Court will address it nonetheless.  In order for this Court to maintain general personal jurisdiction, plaintiff has the burden of showing that Nishikawa had sufficient minimum contacts based on his business contacts with Oklahoma.  Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales, 466 U.S. at 414-416).  Similar to the specific jurisdiction analysis above, plaintiff has failed to make a prima facie showing that Nishikawa had sufficient business contacts

in his individual capacity.  Plaintiff included as exhibits invoices from Mike's Pro Lids—an LLC registered in Oklahoma whose members include Velasquez and Baker of PPE Supplies—billed to KaiKane.  Dkt. # 23-1, at 9-28. Plaintiff also includes as exhibits email exchanges between Nishikawa and Mike's Pro Lids members discussing a visit to Oklahoma and future plans to build their business relationship. Dkt. #23-1, at 5-6.  But, as with the shortcomings in plaintiff's showing for specific jurisdiction, nothing in these exhibits suggest that Nishikawa was acting in his individual capacity, rather than as an officer of KaiKane.  In fact, every email exchange plaintiff included in its exhibits show Nishikawa using his business email, "Troy@kaikaneusa.com," in his communications with Mike's Pro Lids.  See Dkt. # 22-1, at 5-7, 13.  Nishikawa's email signature says "KaiKane USA, Inc." underneath his name.  See, e.g. Dkt. # 22-1, at 13.  Further, every Mike's Pro Lids invoice included as an exhibit states "Bill To: KaiKane USA, INC.," not Troy Nishikawa. Id. at 9-10, 14-17, 19, 22-28.  On invoices where Nishikawa is named, it includes his work email address underneath his full name.  Id. at 18, 20.  As such, plaintiff has failed to meet its burden of showing that Nishikawa, in his individual capacity, had sufficient minimum business contacts with Oklahoma such that he should anticipate being haled into court here.  See World-Wide Volkswagen, 444 U.S. at 297.  Therefore, this Court finds that it does not have general personal jurisdiction over Nishikawa, and Nishikawa's motion to dismiss for lack of personal jurisdiction (Dkt. # 18) is granted.[3]

---

[3]        Because the claims against Nishikawa will be dismissed for lack of jurisdiction, the Court need not consider Nishikawa's argument that plaintiff failed to state a claim against him.

**B. KaiKane**

Defendant KaiKane asks this Court to dismiss this case against it on the ground that this Court has no general or specific personal jurisdiction over defendant.  Dkt. # 17, at 9-13.  Plaintiff argues that KaiKane has sufficient minimum contacts in Oklahoma such that it should anticipate being haled into court here.[4]  Dkt. # 23,  at 14-16.  Plaintiff further argues that this Court exercising personal jurisdiction over KaiKane would not offend traditional notions of fair play and substantial justice.  Id. at 17-18.

**i. Minimum Contacts**

In order for this Court to exercise general personal jurisdiction over KaiKane, plaintiff has the burden of showing that KaiKane had sufficient minimum contacts based on its business contacts with Oklahoma.  Intercon, 205 F.3d at 1247 (citing Helicopteros Nacionales, 466 U.S. at 414-416). Plaintiff submitted Velasquez's affidavit in its response, detailing KaiKane's business contacts with Oklahoma since 2017. Dkt. # 23-1, at 1-3. In the affidavit, Velasquez states: he is a member of PPE Supplies; he is also a member of Mike's Pro Lids, LLC, a limited liability company incorporated under the laws of Oklahoma; Velasquez has known Nishikawa (KaiKane's executive vice president) since 2017; Nishikawa has done business with Mike's Pro Lids since 2017; and Nishikawa has previously traveled to Oklahoma to meet with Velasquez and his business partner.  Id. at 1-2. Plaintiff further provides a 2017 email exchange between Baker and Nishikawa (sent from the kaikaneusa.com email address), where Nishikawa states "you may think that 75 [helmets] is not worth the trip to [Oklahoma], but this trip is for the future. . . . The #1 reason to go all the way to

---

[4]     Plaintiff argues that this Court has specific personal jurisdiction over Kaikane, but the facts and exhibits provided support a prima facie showing for general personal jurisdiction.  Thus, this Court will address the issue as one of general personal jurisdiction.

10

[Oklahoma] is because we want to grow the business with you guys [.]" Id. at 5.  In a later email exchange, Nishikawa (on the kaikaneusa.com email address) makes suggestions for how Mike's Pro Lids can ship their helmets less expensively.  Id. at 6.  Finally, plaintiff attached as exhibits at least fourteen different purchase orders billed to KaiKane between 2017 and 2020 for over $30,000 in merchandise.  Id. at 9-28. So, based on Nishikawa's communications on behalf of KaiKane about growing future business in Oklahoma, and KaiKane's continuous business transactions with Oklahoma-based Mike's Pro Lids, this Court finds that KaiKane has sufficient minimum business contacts with Oklahoma such that it could reasonably anticipate being haled into court here.

### ii. Fair Play and Substantial Justice

As the Court found that KaiKane has minimum contacts with Oklahoma, the Court must now "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" OMI Holdings, 149 F.3d at 1091.  The touchstone of this analysis is whether the exercise of personal jurisdiction would be "reasonable."  Id.  The determination of reasonableness "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]."  Id. At 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

The Tenth Circuit has provided district courts five factors to consider in determining whether the exercise of personal jurisdiction would offend fair play and substantial justice.  The first factor is the burden on defendant of litigating in plaintiff's chosen forum.  Id.  The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims

in a distant forum where the burden of appearing is onerous." Id. At 1096 (citing World-Wide Volkswagen, 442 U.S. at 292).  The second factor analyzes Oklahoma's interest in resolving the parties' dispute.  OMI Holdings, 149 F. 3d at 1095.  Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."  Burger King Corp., 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state.  OMI Holdings, 149 F.3d at 1095.  "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit."  Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)).  The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute."  Id.  "Key to the inquiry are the location of the witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."  Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097).  The  final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies."  OMI Holdings, 149 F.3d at 1097.

KaiKane continuously conducted business with a forum resident for four years.  KaiKane's executive officer, Nishikawa, visited the forum resident business in Oklahoma.  Nishikawa explicitly communicated from the KaiKane email address to the Oklahoma-based business, KaiKane's intention to help the Oklahoma business grow and increase its profit margins.  Thus, KaiKane has

12

a heavy burden to show that the exercise of jurisdiction would be unreasonable.  Looking to the five factors for determining whether exercise of personal jurisdiction would offend fair play and substantial justice, the first factor weighs against the exercise of jurisdiction.  KaiKane is certainly burdened by litigating in Oklahoma, as it has no offices or other property, and employs no agents, in the state.  Dkt. # 17-1, at 1; see Syntroleum Corp. v. Fletcher Int'l, ltd., No. 08-CV-384-JHP-FHM, 2008 WL 4936503, at *6 (N.D. Okla. Nov. 17, 2008).  However, the burden on KaiKane is not so great as in the paradigmatic Tenth Circuit or Supreme Court cases on the issue, such as Benton, where the defendants were foreign corporations being forced to litigate in the United States.  See 375 F.3d at 1079; see also  Asahi Metal Indus. Co., ltd. v. Sup. Ct. of Cal, Solano Cty., 480 U.S. 102, 114 (1987).  The second factor weighs in favor of exercising jurisdiction because Oklahoma has "an important interest in providing a forum in which [its] residents can seek redress for injuries caused by out-of-state actors." OMI Holdings, 149 F.3d at 1096 (citing Burger King Corp., 471 U.S. at 483).  The third  factor favors exercising jurisdiction because plaintiff is an Oklahoma resident, and litigating in an Oklahoma court provides the most effective and convenient relief such that plaintiff has a great interest in litigating the case here.  As to the fourth factor, this also weighs in favor of exercising jurisdiction because Oklahoma is the most efficient place to litigate this dispute as the impact is felt here, Calder v. Jones, 465 U.S. 783, 789 (1984), and the claims arise under Oklahoma state substantive law.  Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097).  While this case involves multiple out-of-state parties, most of whom are from foreign countries,  Oklahoma "is the focal point both of the story and of the harm suffered." Calder, 465 U.S. at 789.  PPE Supplies is an Oklahoma-based LLC; the N95 masks that were never delivered were meant to supply Oklahoma COVID relief efforts; and PPE Supplies owes to OSDH the money

13

that was never refunded.  Also, the parties are already involved in litigation in Oklahoma County;

thus, the evidence and any potential witnesses would already have to be in Oklahoma.  Finally, the

fifth factor is neutral, as the Court can discern no substantive social policy that would be affected

by either the exercise or non-exercise of jurisdiction here.

The majority of the factors weigh in favor of exercising jurisdiction.  As such, KaiKane will

not be able to meet its heavy burden of showing the unreasonableness of exercising jurisdiction.

Given the continuous business contacts with an Oklahoma-based business, and considering the

factors set forth by the Tenth Circuit, exercising general personal jurisdiction over KaiKane in this

case is reasonable.  Therefore, KaiKane's motion to dismiss (Dkt. # 17) based on lack of personal

jurisdiction is denied.

### III. Colorado River Doctrine

KaiKane argues that the Court should decline to exercise its jurisdiction to hear this case

under the Colorado River doctrine.  Plaintiff argues this suit is not parallel to the Oklahoma state

court suit, and no extraordinary circumstances exist to justify this Court declining to exercise its

jurisdiction.  "As a general rule, 'the pendency of an action in the state court is no bar to proceedings

concerning the same matter in the Federal court having jurisdiction . . . .'" D.A. Osguthorpe Family

P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting Colorado River Water

Conservation District v. United States, 424 U.S. 800, 817 (1976)).  However, under Colorado River,

a district court may stay or dismiss a federal suit in favor of a pending state proceeding for "reasons

of wise judicial administration" such as "conservation of judicial resources and comprehensive

disposition of litigation."  Colorado River, 424 U.S. at 817-18.  While the Supreme Court has

"declined to address whether deference to state court proceedings under the *Colorado River* doctrine

should result in a stay or dismissal of the federal action[,]" the Tenth Circuit "think[s] the better practice is to stay the federal action pending the outcome of the state proceedings." Fox v. Maulding, 16 F.3d 1079, 1083 (10th Cir. 1994). Because the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," dismissing or staying a case under Colorado River is appropriate only in "exceptional" circumstances. Fox, 16 F.3d at 1081 (quoting Colorado River, 424 U.S. at 817-18); see also Moses H. Cone Memorial Hosp. v. Mercury Construction Corp., 460 U.S. 1, 25-26 (the Court's "task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.") (quoting Colorado River, 424 U.S. at 818-19) (emphasis in original).

## A. Parallel State and Federal Proceedings

Determining whether a  federal court may decline to exercise jurisdiction under Colorado River is a two step process. First, the court must determine whether the state and federal proceedings are parallel. Id. As the Tenth Circuit notes, "exact identity of parties and issues is not required" for suits to be sufficiently parallel. United States v. City of Las Cruces, 289 F.3d 1170, 1182 (10th Cir. 2009). "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Fox, 16 F.3d at 1081 (quoting New Beckley Mining Corp. v. Int'l Union, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991)). When determining whether proceedings are parallel, courts should not "consider how the state proceedings could have been brought, i.e., what claims and parties could have been included had the federal plaintiff made a timely application to do so." Id. Instead, courts should "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." Id. It is "a serious abuse of discretion" to stay or

dismiss a case under Colorado River if the state court proceedings will not completely and promptly resolve the issue between the parties. Id.

Here, the Court finds that the federal and state actions are sufficiently parallel. Plaintiff, the defendant in the state action, filed third party claims in state court against the same defendants as here: KaiKane, Nishikawa, Khan, Khan Enterprises, IREC, Sethviphou, and Ejet. Dkt. # 17-2. The only party that is not named in the federal action is OSDH; however, OSDH is the plaintiff in the state court action and not involved in the third party suit within that action. Id. In City of Las Cruces, the Tenth Circuit found that the parties and issues need not be identical; all that is required is substantial similarity. 289 F.3d at 1182. Even so, plaintiff's state court third-party petition is virtually identical to its federal court complaint. Compare Dkt. # 2 (plaintiff's complaint in federal proceeding), with Dkt. # 17-2 (plaintiff's third-party petition in state proceeding). Plaintiff asserts the exact same five claims in the federal and state actions: breach of contract (counts 1 and 2), fraud and deceit (count 3), unjust enrichment (count 4), and chose in action (count 5). The only claim that differs is count 6 in the state action, seeking indemnity and contribution from all third party defendants, which is not relevant for the federal suit. Compare Dkt. #2, at 9-13, with Dkt. # 17-2 at 14-18. Because plaintiff raises the same claims against the same parties, the state court would have an opportunity to address any of the issues raised by plaintiff in federal court. Given the substantial similarity of the parties and claims in the state and federal suits, the Court finds that the proceedings are sufficiently parallel and the Court must consider the Colorado River factors to determine whether a stay is appropriate.

16

## B. Exceptional Circumstances Under <u>Colorado River</u>

Second, if the proceedings are parallel, as here, the Court must determine whether "exceptional circumstances" exist, warranting deference to the parallel state court proceeding. <u>Colorado River</u>, 424 U.S. at 818-19.  The Supreme Court emphasizes that exercising jurisdiction is the general rule, and only the "clearest of justifications" can "suffice under *Colorado River* to justify" a departure from that rule.  <u>Moses H. Cone</u>, 460 U.S. at 25-26 (quoting <u>Colorado River</u>, 424 U.S. at 819).  As such, the Tenth Circuit has compiled the following "nonexclusive list of factors" to guide the analysis of whether deference to parallel state court proceedings is appropriate: 1) "whether either court has assumed jurisdiction over property;" 2) "the inconvenience of the federal forum;" 3) "the desirability of avoiding piecemeal litigation;" 4) "the order in which the courts obtained jurisdiction;" 5) "the vexatious or reactive nature of either the federal or the state action;" 6) "whether federal law provides the rule of decision;" and 7) "the adequacy of the state court action to protect plaintiff's rights."  <u>Fox</u>, 16 F.3d at 1082 (citing <u>Colorado River</u>, 424 U.S. at 818, for the first four factors, and citing <u>Moses H. Cone</u>, 460 U.S. at 18 n.20, 23, 28 for factors five through seven).  Some courts also consider whether the party opposing abstention has engaged in impermissible forum shopping.  <u>See, e.g.</u>, <u>Travelers Indem. Co. v. Madonna</u>, 914 F.2d 1364, 1370-71 (9th Cir. 1990).  Significantly, no one factor is dispositive, and the emphasis placed on any single factor "may vary greatly from case to case," depending on the circumstances.  <u>Fox</u>, 16 F.3d at 1082 (quoting <u>Moses H. Cone</u>, 460 U.S. at 16).  The Supreme Court and Tenth Circuit emphasize that the <u>Colorado River</u> factors "must be applied in a pragmatic, flexible manner with a view to the realities of the case at hand."  <u>D.A. Osguthorpe</u>, 705 F.3d at 1235-36 (quoting <u>Moses H. Cone</u>, 460 U.S. at 21).

The Court finds that, on balance, the exceptional circumstances in this case warrant a stay pending the outcome of the parallel state court proceedings. KaiKane argues the Court should abstain from exercising jurisdiction pursuant to Colorado River. Dkt. # 17, at 11-14. Plaintiff responds there are only three narrow categories where abstention is appropriate, none of which applies here.[5] Dkt. # 23, at 17. Plaintiff further argues the Colorado River factors weigh heavily in favor of the Court exercising its jurisdiction. Id. at 21. The Court agrees with KaiKane.

The first factor is not relevant here; neither the state nor the federal court has acquired jurisdiction over property. Next, the Court finds the second factor is neutral; the state court proceeding is in Oklahoma County and this Court sits fewer than 100 miles away in Tulsa County. As KaiKane points out in its motion to dismiss, neither court is "necessarily more or less convenient" to KaiKane, an out-of-state party. Dkt. #17, at 17. And, plaintiff has to appear in Oklahoma County regardless, because it is the defendant in the state court case against OSDH. Dkt. # 17-2, at 1.

The third factor, the desirability of avoiding piecemeal litigation, weighs heavily in favor of stay or dismissal in this case. KaiKane argues that litigating substantially the same claims in both federal and state court "would result in inefficiency and redundancy." Dkt. # 17, at 13. Plaintiff argues this Court has previously found that this factor, standing alone, is insufficient to stay the federal proceeding. Dkt. # 23, at 28. Although the danger of piecemeal litigation alone is not dispositive, here—as in Colorado River—the "danger of piecemeal litigation" is "paramount." See

---

[5]   The Court finds that plaintiff's application of the pre-Colorado River abstention categories is inapposite here. KaiKane correctly points out that Colorado River itself is a departure from the narrow abstention categories cited by plaintiff. Dkt. # 24, at 6-7; see also D.A. Osguthorpe, 705 F.3d at 1233 n.13. Rather, Colorado River is a "judicially crafted doctrine of efficiency that arose to fill a gap in the federal courts' existing inventory of abstention principles." D.A. Osguthorpe, 705 F.3d at 1233 n.13.

Moses H. Cone, 460 U.S. at 20-21.  The claims and parties in this case are all included in the state proceeding.  It would be a duplicative, inefficient use of limited judicial resources to litigate the same issues between the same parties in two different forums.  And unlike the circumstances in Moses H. Cone, where "federal law require[d] piecemeal resolution when necessary to give effect to an arbitration agreement[,]" piecemeal litigation is not an inevitability here.  Thus, the desirability of avoiding such piecemeal litigation weighs in favor of a stay pending the outcome of the state court proceeding.

As to the fourth factor, the order in which the courts obtained jurisdiction, KaiKane argues this weighs in favor of dismissal because the state court obtained jurisdiction first.  Dkt. # 17, at 18. Plaintiff argues that this factor should not weigh in favor of KaiKane because it had no control over the order of filing, since OSDH filed the lawsuit in state court.  Dkt. # 23, at 28.  This Court is not persuaded by plaintiff's argument.  Neither the Supreme Court nor Tenth Circuit opinions consider whether or not the party opposing abstention had control over the order of filing in the fourth factor analysis.  See, e.g., Moses H. Cone, 460 U.S. at 21-22; D.A. Osguthorpe, 705 F.3d at 1235.  Here, the state court case was filed on January 26, 2021, and plaintiff's state third-party petition was filed on March 22, 2021.  Dkt. # 17, at 18; Dkt. # 17-2, at1.  Plaintiff filed suit in federal court on March 31, 2021.  Dkt. # 2. So, the third-party petition (naming the defendants in this case) and the federal complaint were filed within nine days of each other, with the state court obtaining jurisdiction first. However, the Supreme Court found that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Moses H. Cone, 460 U.S. at 21; see also D.A. Osguthorpe, 705 F.3d at 1235 (reiterating that priority is measured in terms of progress in the parallel state and federal proceedings, not merely

by who filed first).  Upon review of the state suit's docket,[6] the state case and this case are at the same stage of litigation.  Thus, the progress in both forums is in equipoise, but the state court obtained jurisdiction first, which cuts in favor of staying the federal proceeding pending an outcome in the state court.

The fifth factor, the vexatious or reactive nature of either action, favors a stay.  KaiKane argues plaintiff's actions are "purely reactive," and that plaintiff "brought this suit in direct response to being sued" in state court.  Dkt. # 17, at 18.  Plaintiff argues that it did not choose to be sued in state court, but it did exercise its statutory right to bring this action in federal court.  Dkt. # 23, at 28.  While plaintiff did not choose to initiate the action in state court, plaintiff did choose to file a third-party petition in the state proceeding, followed by a complaint in this Court nine days later.  This Court finds this suit was filed in direct reaction to being sued in state court, which weighs in favor of staying this proceeding.  The sixth factor, whether federal law provides the rule of decision, weighs in favor of staying this proceeding.  Plaintiff's claims are state contract and tort claims; as such, this Court would apply state law in resolving any disputes.  The seventh factor, the adequacy of the state court action to protect plaintiff's rights, also favors stay.  Plaintiff asserted the same claims against the same parties in the state court action.  There is no reason the state court would not have the opportunity to adequately address each claim plaintiff alleges in the federal suit.

Finally, plaintiff and KaiKane addressed whether the party opposing abstention has engaged in impermissible forum shopping.  See Travelers Indem. Co., 914 F.2d at 1370-71 (9th Cir. 1990).  KaiKane argues plaintiff's actions are based on plaintiff's preference for this forum—plaintiff had

---

[6]     The state suit docket is publicly available on the Oklahoma State Courts Network website: https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=cj-2021 -366.

already asserted every claim in this suit in another action, and "there is no relief afforded by litigating in this Court that Plaintiff cannot seek in the Oklahoma County Suit." Dkt. # 17, at 18.  Plaintiff raises the same argument here as it did for factor five, that it did not choose to be sued in state court.  Dkt. # 23, at 28.  But again, plaintiff was not required to file a third-party petition in state court.  Plaintiff could have filed this lawsuit without raising the same claims against the same defendants in the state action. The Court is persuaded that plaintiff filed this case because of a preference for this federal forum.

In sum, the <u>Colorado River</u> analysis reveals that there are exceptional circumstances in this case warranting deference to the parallel state proceeding.   Thus, this Court finds a stay is appropriate.[7]

**IT IS THEREFORE ORDERED** that defendant Troy Nishikawa's motion to dismiss (Dkt. # 18) is **granted**, and all claims against Troy Nishikawa are dismissed for lack of personal jurisdiction.  **Defendant Troy Nishikawa is terminated as a party defendant**.

**IT IS FURTHER ORDERED** that defendant KaiKane USA, Inc.'s motion to dismiss (Dkt. # 17) is **denied** in part as to personal jurisdiction, **mooted** in part as to failure to state a claim, and **granted** in part as to the <u>Colorado River</u> stay.

---

[7]     Based on the <u>Colorado River</u> stay, the Court will not address the parties' failure to state a claim arguments until resolution of the Oklahoma County suit, and that portion of KaiKane's motion to dismiss (Dkt. # 17) will be deemed moot during the stay.  If this action later proceeds, that portion of the motion will be reinstated and addressed.

**IT IS FURTHER ORDERED** that these proceedings are **stayed** pending the outcome of the Oklahoma County state suit for the reasons stated above. The parties shall file notice in this Court **within 7 days** of the resolution of the Oklahoma County suit.

**DATED** this 23rd day of September, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE