UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PPE SUPPLIES, LLC, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 21-CV-0144-CVE-SH |
| | ) | |
| KHAN ENTERPRISES GENERAL | ) | |
| TRADING COMPANY, | ) | |
| NOAMAN KHAN, an individual, | ) | |
| INNER RENEWABLE ENERGY | ) | |
| (CAMBODIA) Co., Ltd., | ) | |
| MEAS SETHVIPHOU a/k/a SAKHAI | ) | |
| CHAKRATOK, an individual, | ) | |
| KAIKANE USA, INC., | ) | |
| TROY NISHIKAWA, an individual, and | ) | |
| EJET SOURCING LIMITED, | ) | |
| | ) | |
|     **Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court are defendant KaiKane USA, Inc.'s motion for partial reconsideration (Dkt. # 27) and plaintiff PPE Supplies, LLC's response in opposition to defendant's motion (Dkt. # 30). On March 31, 2021, PPE Supplies, LLC (PPE Supplies) filed suit in this Court naming KaiKane USA, Inc. (KaiKane) as a defendant. Dkt. # 2. PPE Supplies alleged five claims for relief: breach of contract against Khan Enterprises General Trading Company (Khan Enterprises), Noaman Khan, Kaikane, and Troy Nishikawa (count 1); breach of contract and breach of promissory note against Inner Renewable Energy (Cambodia) Co., Ltd. (IREC) and Meas Sethviphou (count 2); fraud and deceit against Khan and Sethviphou (count 3); unjust enrichment against Khan, Khan Enterprises, IREC, Sethviphou, and Ejet Sourcing Limited (Ejet) (count 4); and chose in action against Khan Enterprises, Khan, IREC, Sethviphou, and Ejet (count 5). Id. at 9-13. Defendants Nishikawa and

KaiKane moved to dismiss plaintiff's claims, pursuant to Fed. R. Civ. P. 12(b)(2) and (b)(6), arguing that defendants Nishikawa and KaiKane were not subject to personal jurisdiction in Oklahoma and, in the alternative, that plaintiff failed to state a claim upon which relief may be granted.[1]  Dkt. ## 17, 18.

In its September 23, 2021 Opinion and Order (Dkt. # 26), this Court granted defendant Nishikawa's motion to dismiss (Dkt. # 18) for lack of personal jurisdiction.  Dkt. # 26, at 21.  However, as to KaiKane's motion to dismiss (Dkt. # 17), the Court denied in part as to lack of personal jurisdiction, mooted in part as to failure to state a claim, and granted in part as to a Colorado River stay pending the outcome of parallel state court proceedings.  Id.  Specifically, the Court found that the exercise of general personal jurisdiction was appropriate because KaiKane's continuous business contacts with an Oklahoma-based business were such that "it could reasonably anticipate being haled into court here[,]" and the exercise of personal jurisdiction did not offend "traditional notions of fair play and substantial justice."  Id. at 11-14 (internal quotations omitted).  Based on the Court's finding that the exercise of general personal jurisdiction over KaiKane was proper, the Court proceeded to its Colorado River analysis-- finding that a stay pending the outcome of the state court case was appropriate, and declining to address defendant KaiKane's 12(b)(6) argument until resolution of the state court suit.  Id. at 21, n.7.  Consequently, KaiKane filed a motion for partial reconsideration of the Court's September 23, 2021 Opinion and Order (Dkt. # 27); requesting the Court to "reconsider its ruling that KaiKane is subject to general personal jurisdiction in Oklahoma . . . because even continuous and systematic contacts are insufficient to create general [personal]

---

[1]   The Court will not restate the entire relevant factual background, which is detailed in its September 23, 2021 Opinion and Order (Dkt. # 26).

2

jurisdiction when a foreign corporation is not so domesticated in Oklahoma that it is essentially 'at home' in the state." Dkt. # 27, at 1, 3.

## I.

Under Fed. R. Civ. P. 54(b), a non-final order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The Supreme Court has found that "every order short of a final decree is subject to reopening at the discretion of the district judge." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)); see also Price v. Philpot, 420 F.3d 1158, 1167 n.9 (10th Cir. 2005) (citing Moses H. Cone, 460 U.S. at 12, for the proposition that non-final orders are subject to reopening at the district judge's discretion).

## II.

Defendant KaiKane argues that the Court should revisit its finding as to the exercise of general personal jurisdiction over KaiKane in light of the Supreme Court's and Tenth Circuit's general personal jurisdiction jurisprudence in recent years. Dkt. # 27, at 3. Plaintiff responds that KaiKane's motion (Dkt. # 27) falls "far short of warranting reconsideration, [because] KaiKane supplies no new argument, authority, or facts to alter this Court's" prior finding that the exercise of general personal jurisdiction over KaiKane is proper. Dkt. # 30, at 1. The Court finds that defendant's motion for partial reconsideration of its September 23, 2021 Opinion and Order should be granted.

The Court's earlier Opinion and Order (Dkt. # 26) was not a final disposition of the case; thus, it is a non-final order that, at the Court's discretion, may be revised at any time before a final judgment is entered. See Moses H. Cone, 460 U.S. at 12; see also Fed. R. Civ. P. 54(b). Given the

Court's general personal jurisdiction finding's centrality to the case as to defendant KaiKane, the Court chooses to exercise its discretion to review its general personal jurisdiction ruling de novo. In its earlier Opinion and Order (Dkt. # 26), the Court outlined the applicable legal standard for personal jurisdiction, relying on World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980), for the proposition that due process requires that the nonresident "defendant's conduct and connection with the forum State are such that [the nonresident] should reasonably anticipate being haled into court there." Dkt. # 26, at 6. Further, the Court relied on Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)), for the proposition that "[w]hen a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. at 7. However, upon de novo review, the Court finds that the test for general personal jurisdiction has been further clarified since World Wide Volkswagen and Intercon, warranting a reconsideration of the legal standard the Court applied in analyzing the facts of this case.

Under International Shoe Co. v. Washington, 326 U.S. 310, 317 (1945), a court exercising personal jurisdiction over a corporation, requiring it to "defend [a] particular suit . . . away from its 'home' or principal place of business[,]" must be reasonable. There, the Supreme Court found that exercising personal jurisdiction over a corporation was reasonable where "the activities of the corporation [in the forum state] have not only been continuous and systematic, but also give rise to the liabilities sued on, even though no consent to be sued or authorization to an agent to accept service of process has been given." Id. In other words, a "court may exercise personal jurisdiction

4

over an out-of-state defendant who has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (citing International Shoe, 326 U.S. at 316) (internal quotations omitted).

    A.    General Personal Jurisdiction

In subsequent cases, using International Shoe as its guide and starting point, the Supreme Court "distinguished between specific or case-linked jurisdiction and general all-purpose jurisdiction." Id. (citing Daimler AG v. Bauman, 571 U.S. 117, 126-27 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011); Helicopteros, 466 U.S. at 414, nn. 8, 9). "*Goodyear* and *Daimler* clarified that [a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state." Id. (internal quotations omitted). The Supreme Court provided the paradigmatic examples of a corporation's place of incorporation or principal place of business as "forums in which a corporate defendant is 'at home,'" noting that the "exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that state.'" Id. (quoting Daimler, 571 U.S. at 139 n. 19). The Supreme Court noted that Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952), exemplified the "exceptional case." Id. There, the defendant corporation's owner temporarily relocated his enterprise from the Philippines to Ohio during wartime, and the Court found that a court could exercise personal jurisdiction over the defendant corporation in Ohio because "Ohio then became 'the center of the corporation's wartime activities.'"

Id. (quoting Daimler, 571 U.S. 129 n. 8). Thus, the test for exercising general personal jurisdiction requires more than sufficient minimum contacts such that a defendant corporation should reasonably anticipate being haled into court in the forum state, as articulated in World-Wide Volkswagen, 444 U.S. at 297; in all but the rare, exceptional cases, exercising general personal jurisdiction is limited to the forum where a defendant corporation is incorporated or where its principal place of business is located.[2]

This "at home" standard has been recognized and affirmed in the Tenth Circuit. See, e.g., Am. Fid. Assurance Co. v. Bank of N.Y. Mellon, 810 F.3d 1234 (10th Cir. 2016); Monge v. RG Petro-Machinery (Grp.) Co. Ltd., 701 F.3d 598 (10th Cir. 2012). In Monge, the Tenth Circuit held that in order for the district court to exercise personal jurisdiction, the plaintiff "was required to demonstrate by a preponderance of the evidence that [defendant] had 'continuous and systematic general business contacts' with Oklahoma. 701 F.3d at 620 (quoting Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir. 2004)). However, the Tenth Circuit analyzed defendant's "continuous and systematic general business contacts" using a "more stringent minimum contacts test," adopting the "at home" test first articulated in Goodyear. Id. (citing Goodyear, 564 U.S. at 919 and Benton, 375 F.3d at 1080). Consequently, the Tenth Circuit found that because the defendant corporation 1) did not have an Oklahoma place of business or phone listings; 2) its "website did not provide

---

[2] The Court respectfully notes, as Justice Sotomayor did in BNSF Ry. Co., 137 S. Ct. at 1560 (Sotomayor, J., concurring in part and dissenting in part), that the Supreme Court's "at home" standard, which the majority asserts is governed by International Shoe, is in fact a much more stringent and limiting test than the standard articulated in International Shoe. Compare International Shoe, 326 U.S. at 317 (requiring a defendant to defend against lawsuits in a forum other than its home or principal place of business must be reasonable), with BNSF Ry. Co., 137 S. Ct. at 1558 (finding that exercising general personal jurisdiction is appropriate if the forum state is where the defendant corporation is incorporated or has its principal place of business, with a few narrow exceptions).

contacts that approximate physical presence"; 3) its representatives visited Oklahoma once for a few hours; 4) there were a limited amount of email exchanges; and 5) a limited amount of sales to a single Oklahoma resident, the district court properly denied general jurisdiction in Oklahoma. Id.

Here, for the Court to exercise general personal jurisdiction, plaintiff PPE Supplies had the burden of showing by a preponderance of the evidence that defendant KaiKane's general business contacts in Oklahoma were "so 'continuous and systematic' as to render [it] essentially at home in [Oklahoma]." Id. at 614 (quoting Goodyear, 564 U.S. at 919). Plaintiff stated in its complaint that "KaiKane is a corporation incorporated under the laws of the State of Washington with its principal place of business located in the state of Washington." Dkt. # 2, at 2. Further, plaintiff submitted PPE Supplies LLC member Michael Velasquez's affidavit, detailing KaiKane's business contacts with Oklahoma since 2017. Dkt. # 23-1, at 1-3. In the affidavit, Velasquez states: he is a member of PPE Supplies; he is also a member of Mike's Pro Lids, LLC, a limited liability company incorporated under the laws of Oklahoma; Velasquez has known Nishikawa (KaiKane's executive vice president) since 2017; Nishikawa has done business (on behalf of KaiKane) with Mike's Pro Lids since 2017; and Nishikawa has previously traveled to Oklahoma to meet with Velasquez and his business partner. Id. at 1-2. Plaintiff further provides a 2017 email exchange between Baker and Nishikawa (sent from the kaikaneusa.com email address), where Nishikawa states "you may think that 75 [helmets] is not worth the trip to [Oklahoma], but this trip is for the future. . . . The #1 reason to go all the way to [Oklahoma] is because we want to grow the business with you guys [.]" Id. at 5. In a later email exchange, Nishikawa (on the kaikaneusa.com email address) makes suggestions for how Mike's Pro Lids can ship their helmets less expensively. Id. at 6. Finally, plaintiff attached as exhibits at least fourteen different Mike's Pro Lids purchase orders billed to KaiKane between

2017 and 2020 for over $30,000 in merchandise. Id. at 9-28. Based on plaintiff's complaint and submissions, the Court finds that plaintiff has not met its burden to show that KaiKane's general business contacts are so systematic and continuous as to render it essentially at home in Oklahoma.

First, Kaikane's place of incorporation and principal place of business, the paradigmatic indicators of being at home in a forum, are both in Washington state. Second, KaiKane's general business contacts with Oklahoma do not rise to the same level as the defendant corporation in Perkins, which the Supreme Court used as the textbook example of the exceptional case where a corporation is at home in a forum that is neither its place of incorporation nor principal place of business. Compare Dkt. # 23-1, at 1-3, 5-6, 9-28, with Perkins, 342 U.S. at 447-48. By contrast, PPE Supplies' showing of KaiKane's contacts in Oklahoma is far more analogous to the defendant corporation's contacts shown by the plaintiff in Monge, which the Tenth Circuit found was insufficient for the proper exercise of general personal jurisdiction. Compare Dkt. # 23-1, at 1-3, 5-6, 9-28, with Monge, 701 F.3d at 620. Therefore, the Court finds that the exercise of general personal jurisdiction over KaiKane should be denied, and the Court will next analyze whether specific personal jurisdiction is proper in this case.

B.  Specific Personal Jurisdiction

In its response in opposition to KaiKane's motion to reconsider (Dkt. # 30), plaintiff directs the Court to its response to KaiKane's motion to dismiss (Dkt. # 23), in which plaintiff argues it has shown that KaiKane's sufficient minimum contacts with Oklahoma are such that this Court could properly exercise specific personal jurisdiction over KaiKane. Dkt. # 30, at 4 n. 1. Like general personal jurisdiction, the standard for specific personal jurisdiction stems from International Shoe's requirement that an out-of-state defendant have sufficient minimum contacts with the forum state

such that requiring it to defend a suit in that state would "not offend traditional notions of fair play and substantial justice." International Shoe, 326 U.S. at 316 (internal quotations omitted); see also BNSF Ry. Co., 137 S. Ct. at 1558. However, specific personal jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 564 U.S. at 919 (internal quotations omitted). Thus, a court may exercise specific personal jurisdiction where "the suit aris[es] out of or relate[s] to the defendant's contacts with the forum." Daimler, 571 U.S. 127 (citing Helicopteros Nacionales de Colombia, 466 U.S. at 414 n.8 and Goodyear, 564 U.S. at 919) (internal quotations omitted). "Even though a defendant's forum state contacts may not support general jurisdiction, they may still meet the less stringent standard for specific jurisdiction if sufficiently related to the cause of action." Old Republic Ins. Co. v. Cont'l Motors, Inc., 877 F.3d 895, 904 (10th Cir. 2017). "Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" Id.

The Supreme Court's typical purposeful direction analysis[3] examines the out-of-state defendant's "continuing relationships and obligations with citizens of [the forum state]." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) (internal quotations omitted); see also Old Republic, 877 F.3d at 905 (applying the purposeful direction analysis articulated in Burger King). "The Supreme Court has upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state." Old Republic, 877 F.3d at 905 (citing Walden v. Fiore, 571 U.S. 277, 285 (2014) and Burger King, 471 U.S. 462, 473) (internal quotations omitted). However, "an individual's contract with an out-of-state party *alone* can[not] automatically establish sufficient minimum contacts in the other party's home forum[.]" Burger King, 471 U.S. at 478 (emphasis in original). Instead, the Supreme Court emphasizes a flexible and "highly realistic approach that recognizes that a contract is ordinarily but an intermediate step . . . . It is these factors–prior negotiations and contemplated future consequences, along with

---

[3] In Old Republic, the Tenth Circuit discussed two less common frameworks for analyzing purposeful direction: 1) deliberate exploitation of the forum state market and 2) harmful effects in the forum state. For the first alternative framework, the Supreme Court applied this analysis in a situation where an out-of-state magazine publisher's thousands of dollars in monthly sales established purposeful direction. See Keeton v. Hustler Mag., 465 U.S. 770, 781 (1984). The second alternative framework applies "when an out-of-state defendant's *intentional* conduct targets and has substantial harmful effects in the forum state." Old Republic, 877 F.3d at 907 (citing Calder v. Jones, 465 U.S. 783, 790-91 (1984)). The Court finds that neither of these frameworks is applicable to this case, because plaintiff did not allege facts that suggest 1) defendant KaiKane deliberately exploited the Oklahoma market by connecting PPE Supplies to Khan Enterprises in order to source N95 masks; or 2) KaiKane's role in connecting PPE Supplies to Khan Enterprises amounts to intentional conduct that targets and has substantial harmful effects in Oklahoma. Therefore, the Court will apply the typical purposeful direction analysis articulated in Burger King, the circumstances of which, as here, involved a contractual relationship and determining whether such a relationship is sufficient to establish purposeful direction.

the terms of the contract and the parties' actual course of dealing–that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum. Id. At 479.

Here, plaintiff alleges in its complaint that PPE Supplies, LLC member Michael Velasquez reached out to KaiKane officer Nishikawa and inquired whether KaiKane could source N95 respirator masks, to which KaiKane indicated in the affirmative. Dkt. # 2, at 4. The complaint alleges that KaiKane connected PPE Supplies with Khan Enterprises and shortly thereafter PPE Supplies entered into multiple purchase order contracts with Khan Enterprises. Id. at 4, 5. Finally, the purchase order contracts state "Bill to: KaiKane USA, Inc. Redmond WA 98052 USA[.]" Id. As the Supreme Court found in Burger King, 471 U.S. at 478, KaiKane's oral agreement to supply N95 masks, or that KaiKane's name appears on the purchase order contract, is not enough to automatically establish sufficient minimum contacts. Moreover, plaintiff did not submit anything further to establish purposeful direction, as between KaiKane and PPE Supplies, such as information about prior negotiations, contemplated future consequences, contractual terms, or the parties' actual course of dealing. PPE Supplies did submit information about KaiKane's connections to Oklahoma and to PPE Supplies members stemming from KaiKane's dealings with Mike's Pro Lids, LLC, a wholly different business entity. However, KaiKane's prior negotiations, contemplated future consequences, contractual terms, and course of dealing with Mike's Pro Lids is the type of "random, fortuitous, or attenuated" connection that the Supreme Court has held does not justify the exercise of personal jurisdiction. Burger King, 471 U.S. at 480; World-Wide Volkswagen, 444 U.S. at 299. In other words, this suit does not realistically arise from KaiKane's contacts with Oklahoma as a result of conducting business with Mike's Pro Lids. Rather, this suit arises from PPE Supplies

reaching out to a business contact in Washington (KaiKane) that some of the members knew from prior dealings on behalf of another Oklahoma-based business (Mike's Pro Lids); KaiKane connected PPE Supplies with another business contact in Kuwait (Khan Enterprises); Khan Enterprises executed a contract to supply a product from another intermediary in Cambodia (IREC); and IREC dealt directly with a producer in China (Ejet). Somewhere along that chain, one of the intermediaries was allegedly unjustly enriched by withholding PPE Supplies' funds without providing to PPE Supplies the masks it was promised. To exercise specific personal jurisdiction over KaiKane based on its minimal role in this chain of events is the exact type of attenuated or random circumstance that does not justify the exercise of specific personal jurisdiction, similar to the "fortuitous circumstance" where a "single [] automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." World-Wide Volkswagen, 444 U.S. at 295. Therefore, the Court finds that plaintiff did not establish sufficient minimum contacts for this Court to exercise either general or specific personal jurisdiction over KaiKane. Thus, the Court finds that KaiKane's motion to dismiss (Dkt. # 17) for lack of personal jurisdiction should be granted.

**IT IS THEREFORE ORDERED** that KaiKane's motion for partial reconsideration (Dkt. # 27) is **granted**.

**IT IS FURTHER ORDERED** that the Court's prior ruling (Dkt. # 26) denying in part Kaikane's motion to dismiss as to lack of personal jurisdiction, and granting in part KaiKane's motion to dismiss as to the Colorado River stay is **vacated in part**; and KaiKane's motion to dismiss (Dkt. # 17) is **granted**, and all claims against KaiKane are dismissed for lack of personal jurisdiction. **Defendant KaiKane is terminated as a party defendant**.

**IT IS FURTHER ORDERED** that plaintiff is directed to show cause, **within 14 days**, as to why the remaining defendants in this case have not been served, and to show good cause as to why the Court should not dismiss this case as to the remaining defendants.

**DATED** this 9th day of December, 2021.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE